```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
WILSON LUGO,                                                :
                                                            :
                              Plaintiff,                    :
                                                            :       19-CV-6086 (VSB)
              - against -                                   :
                                                            :       OPINION & ORDER
                                                            :
THE CITY OF NEW YORK; POLICE                                :
OFFICER SASHA BRUGAL; POLICE                                :
OFFICER JOSE VALDEZ; POLICE                                 :
OFFICER PEDRO GOMEZ; POLICE                                 :
OFFICER MICHAEL WERNER; POLICE                              :
OFFICER MARIO ESCOBAR; POLICE                               :
OFFICER JOSEPH PARCHEN; POLICE                              :
OFFICER MICHAEL FAHY; MAYOR BILL                            :
DEBLASIO,                                                   :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X
```

Appearances:

Brian Michael Dratch
Franzlau Dratch, P.C.
Livingston, NJ
*Counsel for Plaintiff*

Hannah Victoria Faddis
Seema Kassab
Joshua S Kaufman
Giancarlo Nicholas Martinez
New York City Law Department
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

   Plaintiff Wilson Lugo alleges that Defendants the City of New York, the City's former

Mayor, and seven City police officers violated his constitutional rights by using excessive force

when arresting him and then denying him adequate medical care during the first three days of his

pretrial detention. Defendants move for partial summary judgment, arguing that: (1) service is defective against certain Defendants; (2) other Defendants were not present at the scene of Lugo's arrest; (3) nothing indicates any Defendant acted with deliberate indifference to Lugo's medical needs; and (4) the City is not municipally liable for the actions of any Defendant. For the reasons that follow, the motion is GRANTED.

I. **Factual Background**[1]

On September 6, 2017, Lugo was visiting a friend at his apartment in the Bronx. (Doc. 101-1 ("56.1 Stm.") ¶ 6.) Unbeknownst to Lugo, there was an active warrant for his arrest in relation to a shooting, and Officers Joseph Parchen and Pedro Gomez were tracking his location from an unmarked police sedan nearby, (*id*. ¶¶ 2–4), with assistance from Officers Michael Fahy, Mario Escobar, and Michael Werner, (*see* Docs. 35, 39 (Defendants' *Valentin* responses)).

Lugo walked out of his friend's apartment at approximately 1:50 p.m.. (*See* Doc. 102-4 ("Lugo Dep.") at 16:15-16.) As Lugo was walking down the street, Parchen accelerated the unmarked police car into him. (Lugo Dep. 18:4-23, 19:17-23.) Lugo was hit in the hip, fell to the ground, got up, and started running away. (*Id*. 18:4-7, 19:9-16.) Lugo testified that a heavyset individual caught up with him, and three other individuals "punch[ed him] and kick[ed him] all over" before handcuffing him. (*Id*. 18:7-13; *see also id*. 31:11–34:3.) The parties agree that shortly thereafter officers arrested Lugo. (56.1 Stm. ¶ 10; *accord* Doc. 43 ("Am. Compl.") ¶ 21.) Lugo claims that he did not know that the individuals who arrested him were police officers until they brought him to the police precinct. (Lugo Dep. 35:6-18.)

---

[1] I draw these facts primarily from Defendants' Local Rule 56.1 Statement, (Doc. 101-1), as Plaintiff did not file a Rule 56.1 statement or otherwise oppose Defendants' motion. *See MM Ariz. Holdings LLC v. Bonanno*, 658 F. Supp. 2d 589, 590 n.1 (S.D.N.Y. 2009); *Minus v. City of New York*, 488 F. Supp. 3d 58, 60 n.2 (S.D.N.Y. 2020). I also cite to other portions of the record as necessary.

2

According to Parchen, he did not hit Lugo with the car, but rather he "quickly sped up when [he] got close to [Lugo]," Parchen cut him off from an entrance to a chain link fence and "said police, don't move." (Doc. 102-3 ("Parchen Dep.") at 23:4-13.)[2] Other officers were blocking the other end of the alleyway. (*Id*. 26:10-19.) Lugo evaded Parchen and Gomez and started to run towards the other side of the alleyway, but ran right into the other group of officers, who were able to apprehend him. (*Id*. 24:24-25:3, 26:10-19.)

The arresting officers placed Lugo in the unmarked police car and drove him to the New York Police Department's 42nd Precinct. (56.1 Stm. ¶ 15.) Lugo requested medical attention during the drive and again when he arrived at the police precinct. (*Id*. ¶¶ 15–16.) Eventually, at 3:33 p.m., officers called Emergency Medical Services ("EMS"), and EMS arrived at the precinct at 3:40 p.m.. (*Id*. ¶¶ 17–18.) The EMS record from the interaction indicates that Lugo had bruising and stated he had pain on his right side and pelvis, and informed EMS personnel that he did "not want to go to the hospital" and "just wanted to get checked out." (*Id*. ¶ 18 (citing Doc. 102-10 ("Precinct EMS Report") at 4).)

Officer Jose Valdez—who was not present at the scene of the arrest—completed Lugo's medical treatment of prisoner form at the precinct. (56.1 Stm. ¶ 14; Doc. 102-9 ("Valdez Aff.") ¶¶ 2–3.) In the form, Valdez noted that Lugo complained of "pain to right side of lower side of stomach and small pain to right eye" and "bruising to right side of stomach." (56.1 Stm. ¶ 19 (citing Doc. 2 at 17).)

Lugo was detained at the precinct for two days. On September 7, 2017, Officer Sasha Brugal, who was assigned as the detective investigating the shooting for which Lugo was arrested, arrived at the precinct to process Lugo in connection with his arrest for the shooting.

---

[2] Citations to the Parchen Deposition are to the internal pages of the deposition.

3

(56.1 Stm. ¶ 13, Doc. 102-8 ("Brugal Aff.") ¶¶ 4, 6, 7.) Brugal was not present at the scene of the arrest due to personal out-of-state travel, but was designated as the "arresting officer" on police paperwork because she was the detective assigned to the shooting. (56.1 Stm. ¶¶ 12–13; Brugal Aff. ¶¶ 4–6.)

In the early hours of September 8, 2017, Valdez transported Lugo from the 42nd Precinct to Bronx Central Booking. (56.1 Stm. ¶ 20.) Upon arrival, EMS personnel evaluated Lugo's injuries twice, and cleared him to prisoner intake. (*Id.* ¶ 21; Valdez Aff. ¶ 5.) A pre-arraignment screening form time-stamped 1:57 a.m. on September 8, 2017 indicates that Lugo did not appear sick or injured and did not report any such ailments. (56.1 Stm. ¶ 22 (citing Doc. 102-11 at 2–3).)

A hospital record states that Lugo was admitted to Lincoln Hospital and Mental Health Center at 3:35 a.m. that morning; Lugo told the attending physician that he was withdrawing from heroin and experiencing "chills, nausea, vomiting [], diarrhea, muscle aches, and generalized malaise." (56.1 Stm. ¶ 24 (citing Doc. 103-1 ("Lincoln Hospital Record") at 5).) Lugo was discharged at 10:30 a.m. that morning after telling doctors he was "feeling slightly better" and could "deal with the mild withdrawal symptoms," as he wanted "to leave to go to court and expedite his legal process." ( Lincoln Hospital Record at 4.)

Lugo testified that he "wasn't sent to the hospital but they made it seem like they did take me to the hospital" because the EMS personnel that evaluated him upon his arrival at Bronx Central Booking were affiliated with Lincoln Hospital. (Lugo Dep. 50:2-14, 50:22-24, 50:25-51:9, 52:3-5, 54:14-18.) Lugo also denies ever having taken heroin or telling EMS that he was in heroin withdrawals, although he claims to have taken Suboxone for pain. (*Id.* 51:13-20.)

4

Lugo was charged with second-degree assault in relation to the shooting for which he was arrested, and later pled guilty to "Attempted Murder in the Second Degree . . . and was sentenced to 10 years in prison and 5 years of post-release parole supervision; additionally, an 8 year order of protection was issued." (Rule 56.1 Stm. ¶¶ 10–11.) Lugo claims that the first time he was evaluated by a doctor was following his arraignment on the assault charges, at which point he "finally got to get pain medication." (Lugo Dep. 50:19-21, 54:19-22.) Lugo remains incarcerated. (*See* Rule 56.1 Stm. ¶ 11; Lugo Dep. 58:5.)

During Lugo's term of incarceration, he has been evaluated by various medical professionals at the Downstate, Clinton, and Sing Sing Correctional Facilities regarding hip and eye injuries allegedly sustained during his 2017 arrest. (*See* Lugo Dep. 59–64.) Lugo testified that at some point, he received treatment from a joint and bone specialist in Syracuse, who performed an MRI, told him his "hip was compounded," gave him a shot of cortisone, and ordered him to complete physical therapy. (*Id*. 60:8-15, 61:9.) Lugo also testified that as of the date of his deposition—August 31, 2022—he had undergone various X-rays, was told that "they have to do microscopic surgery to deal with" his hip injury, and he was waiting for another MRI. (*Id*. 63:1-3, 63:8-22.) Because of his hip injury, Lugo is unable to lift heavy objects, cannot sit for extended periods of time, cannot walk long distances without experiencing pain, uses a cane, and has a one-and-a-half-inch scar on his hip. (*Id*. 67:15-20, 68:3-5). Lugo also testified that he still has blurry vision from the injury to his eye sustained during the arrest. (*Id*. 68:23–69:2.)

## II.   **Procedural History**

Plaintiff filed this action pro se on June 27, 2019, alleging that officers used excessive force when arresting him and then ignored his medical needs in the following days. (*See* Doc. 2.) The complaint named the City of New York (the "City"), New York City Police Department

5

("NYPD") Officers Sasha Brugal, Jose Valdez, Pedro Gomez, and John Doe Officers as Defendants, in both their individual and official capacities. (*Id*.) On July 10, 2019, I issued an order of service and directed the Clerk of Court to mail a Pro Se Information Packet to Plaintiff with the order. (Doc. 7.)

On September 4, 2019, I issued an order pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997), (a "*Valentin* order"), directing the City to ascertain the identity and addresses of Defendants Brugal and Gomez. (Doc. 14.) On September 10, 2019, I granted the City's motion to stay the action pending a Civilian Complaint Review Board ("CCRB") investigation of the incident underlying the complaint. (Doc. 16.) The parties were informed on May 7, 2020 that the pending investigation by the CCRB was closed. (Doc. 30.) On May 12, 2020, I lifted the stay and issued a *Valentin* order as to the John Doe Officers. (Doc. 31.) Defendants filed an answer to Plaintiff's complaint on August 7, 2020. (Doc. 32.) Defendants responded to the *Valentin* order with additional information regarding the John Doe Officers on September 25, 2020 and October 23, 2020. (Docs. 35, 39.)

On April 30, 2021, Plaintiff filed an amended complaint, which is the operative complaint in this action. (Doc. 43 ("Am. Compl." or "Amended Complaint").) The Amended Complaint asserts an excessive-force claim and an indifference-to-medical-needs claim under 42 U.S.C. § 1983 against Defendants the City, Brugal, Valdez, Gomez, Officer Mario Escobar, Officer Michael Fahy, Officer Joseph Parchen, Officer Michael Werner, and then-Mayor Bill DeBlasio. (*See id*.) On August 12, 2021, Defendants the City, Brugal, Valdez, Gomez, and Werner filed an answer to the amended complaint. (Doc. 49.) The answer stated that DeBlasio, Parchen, Escobar, and Fahy were notified by the Marshal's Office that they were not served with the

6

Amended Complaint. (*Id*. at 1 n.1.) On October 4, 2021, I entered a scheduling order governing discovery. (Doc. 54.)

Over the next ten months, I granted several extensions of time for the parties to complete discovery. (*E.g.*, Doc. 72.) On July 6, 2022, during the course of discovery, Plaintiff informed me that he had retained an attorney. (Doc. 74.) Plaintiff's attorney appeared on August 3, 2022. (Doc. 77.) Following further discovery-deadline extensions, I held a conference with the parties on February 10, 2023. (*See* Doc. 95.) During the conference, I approved the parties' proposed briefing schedule on Defendants' anticipated motion for summary judgment. (*Id*.)

Defendants submitted the instant motion for partial summary judgment on April 14, 2023. (Doc. 100.) The same day, Defendants submitted a memorandum of law, (Doc. 101 ("Mem")), a Local Rule 56.1 Statement of Material Facts, (Doc. 101-1 ("56.1 Stm.")), and supporting exhibits (Docs. 102–03). Plaintiff did not file an opposition to Defendants' motion, and on July 12, 2023, I issued an order that I would consider the motion fully briefed. (Doc. 108.)[3]

### III. Legal Standard

To prevail on a motion for summary judgment, a movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions . . . or declarations," or "(B) showing that the materials cited do

---

[3] On August 29, 2024, I entered an order in response to Plaintiff's numerous inquiries directing that Plaintiff's attorney withdraw as counsel of record and advising Plaintiff that a decision on the summary-judgment motion would issue in due course. (Doc. 118.) Plaintiff filed a letter dated September 16, 2024 and docketed September 23, 2024 requesting a further status update. (Doc. 120.)

not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When, as here, a motion for summary judgment is unopposed, "the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden" under Rule 56(a). *Wells v. Achievement Network*, No. 18-CV-6588, 2021 WL 810220, at *9 (S.D.N.Y. Mar. 2, 2021) (quoting *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014)). As I consider the record, I must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001). In so doing, I may not "weigh the evidence" and must "eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted).

### IV.   Discussion

I have reviewed Defendants' Rule 56.1 Statement of Material Facts, find they are supported by the record, and therefore deem them admitted. *See supra* n.1. Thus, my task is to "determine the legal merits of all claims or defenses on those admitted facts." *Wells*, 2021 WL 810220, at *9 (quoting *Jackson*, 766 F.3d at 196).

Defendants argue that: (1) Plaintiff's claims against Parchen, Fahy, Escobar, and DeBlasio must be dismissed for lack of service; (2) Plaintiff's excessive-force claim must be dismissed because none of the properly-served individual Defendants were present during Lugo's arrest; (3) Plaintiff's deliberate-indifference-to-medical-needs claim fails on the merits; and (4) Plaintiff has not established the City's municipal liability for any claim. I address each argument in turn.

### A. *Service*

A federal court lacks personal jurisdiction over a defendant that is not properly served. *See In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 431–32 (S.D.N.Y. 2009); *United States v. Thompson*, 921 F.3d 82, 87 (2d Cir. 2019). Federal Rule of Civil Procedure 4(m) states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." A defendant does not waive the defense of defective service by appearing in court to assert it. *Rosado-Acha v. Red Bull Gmbh*, No. 15-CV-7620, 2016 WL 3636672, at *10 (S.D.N.Y. June 29, 2016).

Plaintiff does not dispute that he has not effectuated service on Defendants Parchen, Fahy, Escobar, or former Mayor DeBlasio. (*See* 56.1 Stm. ¶¶ 28–30; Doc. 112 (Plaintiff's attorney's letter to the Court advising he is not in possession of records of service prior to his representation); Doc. 114 (Plaintiff's letter to the Court advising he has not served Defendants).) Thus, the claims against Defendants Fahy, Escobar, Parchen, and DeBlasio are DISMISSED. The dismissal is without prejudice, as defective service deprives the Court of jurisdiction over these Defendants. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 126 (2d Cir. 2022).

### B. *Excessive Force*

The remaining individual Defendants are Officers Brugal, Valdez, Gomez, and Werner. Defendants argue that it is undisputed that Defendants Brugal and Valdez were not present at any time during Lugo's arrest, so any excessive-force claim against them fails. (Mem. at 10–11.) Defendants do not challenge Lugo's excessive-force claim against Gomez and Werner. (*Id.*)

The Fourth Amendment prohibits a police officer from using excessive force when making an arrest. *See Collins v. City of New York*, 295 F. Supp. 3d 350, 369 (S.D.N.Y. 2018); *see*

9

*also Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018).  An officer is liable under 42 U.S.C. § 1983 for the use of excessive force when "he either:  (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so."  *Russo v. DiMilia*, 894 F. Supp. 2d 391, 414 (S.D.N.Y. 2012) (quoting *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003)).

It is undisputed that Brugal and Valdez were not on the scene of Lugo's alleyway arrest.  (*See* 56.1 Stm. ¶¶ 12, 14.)  Thus, these officers could not have participated in the alleged assault, nor could they have had a reasonable opportunity to intervene against the alleged assault.  *See Russo*, 894 F. Supp. 2d at 414.  Therefore, the motion for summary judgment as to these officers is GRANTED, and Plaintiff's excessive-force claim against Brugal and Valdez is DISMISSED WITH PREJUDICE.  *See, e.g.*, *Miller v. Austin*, No. 20-CV-1958, 2021 WL 1226770, at *5 (S.D.N.Y. Mar. 31, 2021) ("A grant of summary judgment is a final judgment on the merits.").

### C. *Indifference to Medical Needs*

The Fourteenth Amendment prohibits government officials from acting with "deliberate indifference" to the medical needs of pretrial detainees who are "injured while being apprehended by the police."  *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983) (internal quotation marks omitted).  The thrust of Plaintiff's deliberate indifference claim is that the police officers involved in his arrest, three-day detainment at the 49th Precinct, and transfer to Bronx Central Booking acted with deliberate indifference to his medical needs by ignoring his requests to go to the hospital for the hip and eye injuries he sustained during his arrest.  (*See generally* Lugo Dep. 43–50.)  Lugo does not dispute that he was examined by EMS personnel upon his arrival at the 49th Precinct on September 6, 2017.  He testified that after asking to be taken to the hospital during the ride to the precinct, upon his arrival there, "the EMS

10

came and patched me up and left. They didn't do a very professional job, they were supposed to take me to the hospital and they didn't do that." (*Id*. 47:23-25, 43:9-16, 43:25-44:5.) Lugo claims to have told the EMS "I need to be seen by a doctor because I have a hip injury, I have a hole in my hip and I'm in pain." (*Id*. 48:3-5.) Although Lugo disputes that he was admitted to Lincoln Hospital upon his arrival at Bronx Central Booking, he does not dispute that he received another EMS examination at that time. (*Id*. 49:11-50:5.)

For Lugo's deliberate-indifference claim to survive Defendants' motion for summary judgment, there must be record evidence on which a jury could reasonably find that (1) Lugo "had a serious medical need" that went unaddressed, and (2) "Defendants acted with deliberate indifference to such need[]." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).

Defendants are entitled to summary judgment on Lugo's deliberate-indifference claim. With regard to the first prong, Lugo must show that he "was actually deprived of adequate medical care" for a condition that "posed an unreasonable risk of serious damage to his health." *Dumel v. Westchester Cnty.*, 656 F. Supp. 3d 454, 464 (S.D.N.Y. 2023) (alteration adopted and internal quotation marks omitted). This is an "objective" test that courts "evaluate[] in light of contemporary standards of decency," *Darnell*, 849 F.3d at 30 (internal quotation marks omitted), focusing on "the particular risk of harm" the detainee faced "due to the challenged deprivation of care," *Dumel*, 656 F. Supp. 3d at 464 (quoting *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003)).

Lugo does not dispute that EMS personnel evaluated him shortly after his arrival at the precinct and again upon his arrival at central booking in the Bronx. Thus, viewing Lugo's testimony in his favor and eschewing any credibility determinations, the "challenged deprivation

11

of care" seems to be that Lugo was not taken to the hospital. *Dumel*, 656 F. Supp. 3d at 464 (quoting *Smith*, 316 F.3d at 186). However, Lugo has not shown that the decision not to bring him to the hospital "posed an unreasonable risk of serious damage to his health." *Id*. (alteration adopted and internal quotation marks omitted); *see Ridge v. Davis*, No. 18-CV-8958, 2022 WL 357020, at *15 (S.D.N.Y. Feb. 7, 2022) ("Courts have consistently rejected deliberate indifference claims . . . involving relatively brief delays or interruptions in treatment and a dearth of evidence that the plaintiff's pain or medical condition worsened as a result." (collecting cases)). The medical records of the treatment Lugo received all indicate that he reported moderate injuries, but that he did "not want to go to the hospital." (Precinct EMS Report 4; *see* Lincoln Hospital Record at 4–5.) Nothing in the record indicates that during the relevant time period, Lugo experienced "any pain-related lapses in [his] functioning or complain[ed] of excruciating pain at any of his examinations." *Ridge*, 2022 WL 357020, at *15 (citing *Benitez v. Pecenco*, No. 92-CV-7670, 1995 WL 444352, at *3 (S.D.N.Y. July 27, 1995)). In short, Lugo cannot show that he ever faced an objectively serious risk of harm in connection with the decision to call EMS rather than take him directly to the hospital.

Moreover, no jury could reasonably conclude that any of the remaining Defendants—Brugal, Valdez, Gomez, and Werner—acted with deliberate indifference. The requisite mental state is "culpable recklessness"—the plaintiff must show "either that the defendants knew that failing to provide the complained of medical treatment would pose a substantial risk to [the detainee's] health or that the defendants should have known that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (emphasis omitted) (quoting *Charles*, 925 F.3d at 87); *see also Dumel*, 656 F. Supp. 3d at 465.

It is unclear how much Officers Brugal, Valdez, Gomez, and Werner—the only individual Defendants that were properly served—knew about the extent of Lugo's injuries. The most specific portion of the record on this point is Valdez's affidavit, in which he states that he filled out a "medical treatment of prisoner form" for Lugo upon his arrival at the precinct on September 6, 2017, and that he observed EMS personnel speaking with Lugo two times at Bronx Central Booking. (Valdez Aff. ¶¶ 3–5.) Valdez's report noted "pain to right side of lower side of stomach and small pain to right eye" and "bruising to right side of stomach." (56.1 Stm. ¶ 19 (citing Doc. 2 at 17).) Additionally, Lugo testified that he asked unspecified officers to be taken to the hospital during the ride to the precinct, upon his arrival to the precinct, and again at the booking facility. Even assuming every remaining individual Defendant knew that Lugo was moderately injured and had requested to be taken to the hospital, Lugo's claim fails because in most cases, an "officer's obligation to provide necessary medical treatment to a detainee 'is satisfied when the police summon medical assistance.'" *Est. of Richards by Stephens v. City of New York*, No. 18-CV-11287, 2024 WL 3607220, at *12 (S.D.N.Y. July 31, 2024) (quoting *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 414 (E.D.N.Y. 2011)). As discussed, there is no dispute that Lugo received treatment from EMS. To avoid summary judgment in these circumstances, Lugo would need to identify record evidence showing that any Defendant should have known that the treatment Lugo received was so insufficient that it posed a substantial risk to Lugo's health. The record does not support that inference, and Lugo has not offered any additional evidence in support of his deliberate-indifference claim. The motion for summary judgment is GRANTED as to this claim, and the claim is therefore DISMISSED WITH PREJUDICE. *See Miller*, 2021 WL 1226770, at *5.

### D.     *The City's Liability*

Lugo named the City as a Defendant to his excessive-force and deliberate-indifference claims.  Section 1983 supports municipal liability in certain circumstances.  *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978).  "To hold a city liable under [Section] 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements:  (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (alteration adopted) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Here, even if every individual police officer that Lugo named as a Defendant in this lawsuit violated his constitutional rights, the City would not be liable, because Lugo does not identify a "policy or custom" connecting the officers' actions to the City.  *See id*.  The closest Lugo comes to mustering evidence on this claim is his testimony that EMS personnel were "very unprofessional" and that he believed the EMS personnel were "directed to do their duty the way they did it for investigation purposes"—*i.e.*, EMS was following a City policy to botch their medical care and to understate Lugo's injuries for some unidentified investigation.  (Lugo Dep. 43:10-12.)  Yet "[a] plaintiff's conclusory allegations of municipal liability will not defeat a motion for summary judgment on a *Monell* claim" that a municipality must answer for its employees' conduct.  *Delanuez v. City of Yonkers*, No. 20-CV-4476, 2022 WL 16540682, at *9 (S.D.N.Y. Oct. 28, 2022) (quoting *Watts v. N.Y.C. Police Dep't*, 100 F. Supp. 3d 314, 330 (S.D.N.Y. 2015)); *see Allen v. City of New York*, 480 F. Supp. 2d 689, 719 (S.D.N.Y. 2007) (collecting cases).  Lugo does not allege that any of the police officer Defendants were policymakers, and does not identify any other theory by which the City might be liable for any

action here. The City is therefore entitled to summary judgment, and the claims against it are DISMISSED WITH PREJUDICE. *See Miller*, 2021 WL 1226770, at *5.

## V. Conclusion

For the foregoing reasons, Defendants' motion for partial summary judgment is GRANTED. All claims against Fahy, Escobar, Parchen, and DeBlasio are DISMISSED WITHOUT PREJUDICE. All claims against the City, Brugal, and Valdez are DISMISSED WITH PREJUDICE. The deliberate-indifference claims against Gomez and Werner are DISMISSED WITH PREJUDICE.

The parties shall meet and confer, then file a joint case status letter no later than August 18, 2025.

The Clerk of Court is respectfully directed to mail a copy of this Order to Plaintiff at the Green Haven Correctional Facility, 594 Rt. 216, Stormville, New York 12582.

The Clerk of Court is respectfully directed to terminate the pending motion at Doc. 101.

SO ORDERED.

Dated: July 16, 2025
New York, New York

_____
Vernon S. Broderick
United States District Judge